**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**United States of America,**

       *Plaintiff*,

**v.**                                                                           **Case No. 3:10-cr-113
Judge Thomas M. Rose**

**Marc N. Greenberg,**

       *Defendant*.

---

**ENTRY AND ORDER GRANTING IN PART DEFENDANT'S
MOTION TO ALTER OR AMEND JUDGMENT.** (DOC. 26).

---

Pending before the Court is "Defendant's Motion to Alter or Amend Judgment Dated 4/3/2012 Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." Doc. 26. On February 22, 2012, Defendant filed "Defendant's Motion for Clarification of Conditions of Supervised Release." Doc. 22. Therein, Defendant requested that the Court modify a condition of his supervised release that restricts where he may reside.

The Court originally sentenced Defendant on November 5, 2010, on counts of possession of child pornography and transfer of obscene materials to minors. Doc. 10. Defendant was sentenced to a term of 24 months of imprisonment, followed by 5 years of supervised release. *Id.* One of the special conditions the Court imposed was that "The defendant's residence and employment shall be pre-approved by the probation officer and in compliance with state and local law." *Id.* at 4, ¶ 2.

On November 8, 2011, Defendant's probation officer declined a request by Defendant to reside at the residence he inhabited at the time of his offense, explaining:

> It is my interpretation of the state sex offender laws that you cannot reside at this address upon your release because the residence is within 1,000 feet of a school. Your offense began in January 2009, well after both state sex offender laws were passed regarding residency restrictions (July 31, 2003 and July 1, 2007).

Doc. 22-1.

The Court denied Defendant's Motion for Clarification of Conditions of Supervised Release, doc. 22, finding the matter not yet ripe for consideration. Doc. 25. On February 22, 2012, Defendant's motion to Alter or Amend the Judgment asserts that the matter is now ripe. The Court agrees. See *United States v. Lee*, 502 F.3d 447, 450 (6th Cir. 2007) (citing *United States v. Wilson*, 172 F.3d 50, 1998 WL 939987, at *2 (6th Cir. Dec. 22, 1998)).

Government has filed a response, bereft of citations to law precedential or statutory, leaving the Court to brief itself. Defendant has filed a reply, rendering this matter ripe for consideration.

**Standard**

A district court has wide discretion when imposing terms of supervised release. See *United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006). The Court's conditions of supervised release must merely be reasonably related to the goals of supervised release. The rationale for providing a term of supervised release is to assist the transition from prison to liberty. *Johnson v. United States*, 529 U.S. 694, 708-09 (2000). Supervised release is intended to rehabilitate the defendant, and is not punishment. *United States v. Lewis*, 498 F.3d 393, 397 (6th Cir. 2007).

"Even individual fundamental rights safeguarded by the United States Constitution may be denied or limited by judicially exacted special conditions of supervised release, as long as those

restrictions are directly related to advancing the individual's rehabilitation and preventing recidivism." *Id.* at 608 (quoting *United States v. Kingsley*, 241 F.3d 828, 839 n.15 (6th Cir. 2001)). Thus, "'where a condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, it must be upheld.'" *United States v. Lay*, 583 F.3d 436, 450 (6th Cir. 2009) (quoting *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir.1992)). See also *United States v. Ferguson*, 669 F.3d 756, 764 (6th Cir. 2012).

Finally, as Defendant asserts, the Court does not defer to the interpretations of law of its probation officers. See *United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006).

**Analysis**

Defendant contends the Constitution of the State of Ohio prohibits the State of Ohio from enforcing a law prohibiting a property owner from residing in his property. Defendant is incorrect. As Defendant asserts, Section I, Article I of the Ohio Constitution provides that "all men are, by nature, free and independent, and have certain inalienable right, among which are...acquiring, possessing and protecting property." Defendant asserts that this creates a fundamental right to reside in his property, limiting the power of the Court to restrict where he resides. Doc. 26-1 at 9-10. More precisely, he claims that "In Ohio, the fundamental right to own property extends to include the right to reside within that property." (Doc. 26-1, at 9). In support of this contention, he selectively quotes the Ohio Court of Appeals for the Second District, "[I]t is not merely the technical ownership of property that enjoys fundamental constitutional protection, but the right of the use and enjoyment of property, which is part of the bundle of ownership rights. In our view, this would clearly include the right to reside in residential property." *Ohio v. Mutter*, 171 Ohio App. 3d 563, 567, 871 N.E.2d 1264 (Ohio App. 2007).

The Court notes that Ohio particularly recognizes the role of natural law in determining fundamental rights and interpreting property rights. *See Norwood v. Horney*, 110 Ohio St. 3d 353, ¶ 35, 853 N.E.2d 1115 (Ohio 2006). Natural law, however, has not generally been understood to create property rights. "The division of possessions is not according to the natural law, but rather...an addition thereto devised by human reason." Thomas Aquinas, SUMMA THEOLOGICA, II-II, Q66, Reply to Objection 1. See also John Finnis, NATURAL LAW AND NATURAL RIGHTS, 173-74 (1980). Neither did philosophers such as Grotius, Puffendorf or Locke regard property as an unqualified natural right. Bret Boyce, *Property as a Natural Right and as a Conventional Right in Constitutional Law*, 29 Loy. L.A. Int'l & Comp. L. Rev. 201, 204, 214 (Spring 2007). Thus, while the Ohio Supreme Court directs one to look to natural law to discern property rights, property is not seen as a natural right in the tradition that stretches "from Plato and the Hellenistic philosophers, through Augustine and William of Ockham, all the way to the Enlightenment...in Rousseau and his followers, and in America, [to] the…tradition that…influenced figures such as Franklin and Jefferson." Boyce, 29 Loy. L.A. Int'l & Comp. L. Rev. at 213-14. Other framers were more pointedly aware of the position of private property in natural law: "Man did not make the earth, and, though he had a natural right to occupy it, he had no right to locate as his property in perpetuity any part of it; neither did the Creator of the earth open a land-office, from whence the first title-deeds should issue." Thomas Paine, *Agrarian Justice*, (1797), in THE LIFE AND MAJOR WRITINGS OF THOMAS PAINE 605, at 611 (Philip S. Foner ed., Citadel Press 1974).

Property rights, thus, do not exist in natural law, but are a human creation that, at most, accords with natural law. "Modern constitutional discourse, particularly in the United States, has tended to lose sight of these complexities." Boyce, 29 Loy. L.A. Int'l & Comp. L. Rev. at 204.

See, *e.g.*, *Parham v. Justices of Decatur Cty. Inferior Court*, 9 Ga. 341, 348 (Ga. 1851) (Nisbet, J.). *Henry v. Dubuque Pacific RR. Co.*, 10 Iowa 540, 543 (1860) (Wright, J.). Following the Ohio Supreme Court's prompting to look to natural law for guidance in understanding fundamental rights, the Court does not perceive a fundamental right to utilize property as one desires at natural law.

Resolution of Defendant's claim is aided by an examination of the rights he actually possesses in the property in which he wishes to reside. The Court assumes that Defendant possesses his former residence in fee simple. A fee simple is the "highest right, title and interest that one can have in land. It is the full and absolute estate in all that can be granted." See *Masheter v. Diver*, 20 Ohio St. 2d 74, 78, 253 N.E.2d 780 (Ohio 1969). Yet, it is still a "fee," that is, an ownership right derived from the governing authority to whom its use is ultimately owed. "Fee simple" stands "in contradistinction to 'Allodium[.]'" Black's Law Dictionary at 741 (Rev. 4th Ed. 1968). Allodium is absolute possession. "The fee-simple estate...was never considered as absolute, as were lands in allodium, but were subject to some superior on condition of rendering...service, and in which superior the ultimate ownership of the land resided." *In re Waltz*, 197 Cal. 263, 267, 240 P. 19, 20 (1925) (citing 1 Cooley's Blackstone (4th Ed.) p. 512). In Ohio, ownership in fee simple is still "subject…to the limitations of eminent domain, escheat, police power, and taxation." *Muirfield Assn., Inc. v. Franklin Cty. Bd. of Revision*, 73 Ohio St.3d 710, 711, 654 N.E.2d 110, 111 (Ohio 1995).

These limitations are immense. If the State of Ohio has the power to escheat the entirety of Defendant's metaphorical bundle of property right sticks, then it may certainly also escheat the individual stick of permission to reside in that property. Alternatively, the State may invoke its police power. The state might reasonably forbid convicted sex offenders from residing in areas

that they perceive as creating heightened risks of recidivism to the community. Thus, it is better stated that a fee simple estate "is the highest form of ownership a person can have in real property because it has no restrictions on its use or enjoyment except those restrictions imposed by public policy for the common good." David A. Thomas, THOMPSON ON REAL PROPERTY § 17.01 at 599 (2 ed. 2000).

Thus, lower Ohio courts are not willing to extend any of the reasoning of *Norwood* beyond its narrowest holding. In the same case to which Defendant refers the Court, one Ohio appellate court has opined:

> we have no difficulty in continuing to view an owner and occupier of residential property as possessing a substantive right to continue to own and occupy that property. That right, venerable though it may be, may be taken away prospectively. Thus, we have no difficulty with the application of R.C. § 2950.031 to a person who commits a sexual offense after the effective date of the statute, just as we would have no difficulty with taking away that person's liberty, for a statutorily proscribed period of time, after being convicted of the offense.

*Ohio v. Mutter*, 171 Ohio App. 3d 563, 568, 871 N.E.2d 1264, 1268-69 (Ohio App. 2007).

Next, Defendant argues that "no public safety issue requires the restriction," doc. 26-1 at 6-7, ignoring that the Court's conditions of supervised release need not be required by public safety, but only reasonably related to the goal of supervised release, rehabilitating the defendant. *United States v. Lewis*, 498 F.3d 393, 397 (6th Cir. 2007). Additionally, Defendant asserts that "no study has found a connection between public safety and residency restrictions placed on sex offenders." Doc. 26-1 at 7. Again, the Court is not required to substantiate its conditions with social science research, but merely to have them reasonably relate to rehabilitation. The Court finds that requiring someone who has been convicted of possession of child pornography to locate his residence more than 1,000 feet from facilities that serve large numbers of minors is reasonably related to deterring Defendant from recidivism. Defendant also requests that the Court allow the

State of Ohio to enforce its prohibition on sex offenders from living within 1,000 feet of a school, so that defendant might obtain from the State "a final, []appealable order...enjoining him from said residence." Doc. 26-1 at 8. Defendant is afforded the ability to challenge the constitutionality of this restriction, however, as the ruling contained herein is a final appealable order.

Even if the Court is wrong as to the protections afforded by the Ohio Constitution, federal courts are not bound by restrictions imposed by state law, even state constitutions, when imposing sentences. *Printz v. United States*, 521 U.S. 898, 944, 117 S. Ct. 2365, 2388 n.3 (1997) (quoting *The Federalist No. 44* (J. Madison)). See also *United States v. Coutentos*, 651 F.3d 809, 819 (8th Cir. 2011) and *United States v. Bollin*, 264 F.3d 391, 421 (4th Cir. 2001)(finding no abuse of discretion in forfeiting assets).

Nevertheless, the Court acknowledges that a reviewing court might disagree and further determine that Defendant is entitled to a correct determination of the law as it might apply to him. See *United States v. Flack*, 392 F. App'x 467, 469, 2010 WL 3398483, *3 (6th Cir. 2010) ("In reviewing a sentencing calculation for procedural reasonableness, findings of fact made by the district court for sentencing are reviewed for clear error, and legal conclusions are reviewed *de novo*. [citations omitted]"). For this reason, the Court will grant Defendant's request in part, making it an express special condition of Defendant's supervised release that Defendant shall not reside within 1,000 feet of a school.

This, then still leaves the Court with Defendant's assertion that he possesses a right in the United States Constitution to reside in his property. This contention was well addressed by Magistrate Judge Deavers, when she explained:

> the Court finds that the residency restriction within Ohio Revised Code § 2950.034 does not implicate a fundamental right. See *Weems v. Little Rock Police Dept.*, 453 F.3d 1010, 1015 (8th Cir. 2006) (holding that Arkansas statute prohibiting sex

7

> offenders from living within 2,000 feet of a school did not infringe on a fundamental right). Ohio Revised Code § 2950.034 does not impair Plaintiff's interests in family relations because it "does not prevent persons subject to its restrictions from living with their families, it only regulates the location where they may live." *Doe v. Petro*, No. 1:05−CV−125, 2005 WL 1038846, at *3 (S.D. Ohio May 3, 2005) (holding that Plaintiff was not likely to succeed on various constitutional challenges to Ohio law forbidding sex offenders from living within 1,000 feet of a school). Furthermore, as at least one federal circuit court has explicitly held that the Constitution does not establish "a right to 'live where you want' that requires strict scrutiny ...." *Miller*, 405 F.3d at 714.

*Spangler v. Collins*, 2012 WL 1340366, 5-6 (S.D. Ohio 2012) (Deavers, M.J.) (parolee moved from N.C. to Ohio to live with sister, only to discover she lives within restricted area around a school.)   See also *Doe v. Miller*, 405 F.3d 700, 713-14(8th Cir. 2005) ("Some thirty years ago, our court said "we cannot agree that the right to choose one's place of residence is necessarily a fundamental right," *Prostrollo v. Univ. of South Dakota,* 507 F.2d 775, 781 (8th Cir. 1974), and we see no basis to conclude that the contention has gained strength in the intervening years.")

**Conclusion**

The Court **GRANTS IN PART** "Defendant's Motion to Alter or Amend Judgment Dated 4/3/2012 Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." Doc. 26.   In addition to the special condition that "The defendant's residence and employment shall be pre-approved by the probation officer and in compliance with state and local law," is added the special condition that Defendant shall not reside within 1,000 feet of a school.   In all other regards, Defendant's motion is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, August 29, 2012.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE